IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT
HOUSTON DIVISION

| | | |
|---|---|---|
| AMARACHI IGWE, | * | |
|    Plaintiff | * | |
| | * | |
| | * | |
| V. | * | CIVIL ACTION NO. _____ |
| | * | |
| TEXAS DEPARTMENT OF CRIMINAL | * | |
| JUSTICE, | * | |
|    Defendant | * | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, AMARACHI IGWE, hereinafter called Plaintiff, complaining of and about the TEXAS DEPARTMENT OF CRIMINAL JUSTICE, hereinafter called Defendant and for cause of action shows unto the Court the following:

**I.**

**PARTIES AND SERVICE**

1. Plaintiff Amarachi Igwe is a resident of Harris County, Texas.

2. Defendant, Texas Department of Criminal Justice may be served with process at the following address: Executive Director, Bryan Collier, Texas Department of Criminal Justice by serving him at 209 W. 14th, 5th Floor, Price Daniel Bldg., Austin, Texas 78701.

## II.

## JURISDICTION AND VENUE

3. The subject matter in controversy is within the jurisdictional limits of this Court.

4. Venue in the Southern District of Texas, Houston Division is proper in this cause pursuant to inter alia, 28 United States Code, Section 1391 (b)(c)(2018) because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Harris County, Texas.

## III.

## NATURE OF THE ACTION

5. This is an action under the Texas Labor Code Chapter 21 et. seq. and sovereign immunity from suit has been waived pursuant to Chapter 21, Section 21.005 of the Texas Labor Code and, in addition, suit is brought pursuant to 42 U.S.C., Section 2000 ( e ) (2017).

## IV.

## CONDITION PRECEDENT

6. All conditions precedent to filing this action have been satisfied. (See EEOC Right to Sue Letter attached as Exhibit "1").

## V.

## DISCOVERY CONTROL PLAN LEVEL

7. Plaintiff intends that discovery be conducted under an Agreed Discovery Plan to be submitted by counsel of the parties.

8. Jurisdiction is pursuant to federal question subject matter jurisdiction under Title 28 U.S. Code, Section 1331, as Plaintiff hereby seeks relief inter alia, under Title 42, Section 2000 (e) of the United States Code.

## VI.

## FACTS

9. Plaintiff, Amarachi Igwe, a member of a protected class, female, commenced her employment as a correctional officer with the Texas Department of Criminal Justice (hereinafter "TDCJ") around October 2013.  After completing the required training regimen with the Defendant, she was assigned to the Clemens Unit, located at 11034 Highway 36, Brazoria County, Texas.  Almost immediately, a fellow correction officer and a married man and a father, Lawrence Eneogwe began to make sexual remarks to her while on the job in the unit.  Mr. Eneogwe would repeatedly request that he be allowed to date her or sleep with her.  Plaintiff rebuffed Mr. Eneogwe's sexual advances and made it very clear that she did not wish to have any social relations with him.  After several attempts at requesting that he stop his sexual advances, the sexual harassment became worse in that he began to touch her body.  First, he would touch her when she was in a confined position in the unit, then he began to touch her backside when they were in the unit working together on the same shift. Eneogwe would say "that place will rust if you don't let me service it." Among other things. Plaintiff repeatedly rebuffed his advances.

10. For a period of time, Plaintiff was transferred to the Humble location of TDCJ. She was thereafter transferred to Joe Kegans State Jail, in Houston around 2016. Inexplicably, Eneogwe was also working at Kegans.

11. Eneogwe then resumed sexually harassing Plaintiff, stating things like: "I'm still waiting for you, just try it one time and you'll be requesting for it more and more." Plaintiff repeatedly warned him to stop harassing her. Rather than stop, Eneogwe began to mock the Plaintiff relating to her height and resumed his sexual harassment within the unit. He would call her "shorty" or "psych patient" and that only a psych patient would resist him. He would use his hand to demonstrate Plaintiff's height and do other things he knew would provoke Plaintiff. Additionally, he stated many times that they were both Nigerians and that she should submit to his demands as a Nigerian. Plaintiff then reported the sexual harassment to her supervisor, Lt. Lewis. Lt. Lewis did nothing to stop the sexual harassment. (Lt. Lewis later stated that the Plaintiff and Mr. Eneogwe had previously been complaining about each other and that she had spoken to both of them – a fact which is untrue)

12. Around, year 2016, while working at the Kegans Unit, an inmate slapped Plaintiff on the backside and the Plaintiff reported the incident to her supervisor. Plaintiff's supervisors, Lt. Williams and Lt. Lee told her not to worry about it and that they would handle the matter relating to the inmate. Handling such matter requires quite a bit of effort and involves a lot of paperwork. The supervisors however neglected to complete the paperwork and did nothing about the inmate matter. Plaintiff then reported the matter through an IOC (Inter Office Communications). That action, under TDCJ protocol, made the supervisors look bad and they thereafter refused to be friendly with the Plaintiff. They maintained their friendship with Eneogwe however.

13. When Eneogwe heard about the inmate incident, he stated to the Plaintiff that "He (inmate) got it for free, this is what I have been begging you to give me for three years" and "You need to test me and see how good I am." He harassed Plaintiff

14. Plaintiff reported the sexual harassment to her supervisor, Lt. Lewis again.  Lt. Lewis said she would talk to him and get back with Plaintiff. Lewis never talked to him or get back with Plaintiff. Rather, Eneogwe intensified his harassment and got harsher, nastier and meaner to the Plaintiff for rebuffing his sexual advances  (Lt. Lewis later stated that the Plaintiff and Mr. Eneogwe had previously been complaining about each other and that she had spoken to both of them – a fact which is untrue)

15. As part of her job duties as a correctional officer, Plaintiff would stay with and monitor the inmates. With that job duty, whenever she had to use the restroom or leave the inmates, the room she monitors and/or the restroom must be unlocked by another correctional officer, the hallway officer.  Plaintiff would request orally that the door be opened to allow her to exit the room or use the restroom.  Whenever Eneogwe was the hallway officer, he would refuse to open the door for the Plaintiff until Plaintiff screamed for help; or refuse to open the door and he would remind her that she was missing something good or harass her sexually one way or the other and then take his time, before he opened the door for her.

16. In other instances, Eneogwe scolded her for not socializing with other Africans working on the unit before opening the door. In fact, Eneogwe joined hands with some other Africans at TDCJ who advised Plaintiff to stop socializing with the Americans because they are no good and that they would soon dump her; and that she should only socialize with Africans, her kind. Plaintiff told them that the Americans she socialized with, made

her day; made her happy and enabled her to keep her sanity, in spite of Eneogwe's harassments.

17. One of those African officers is Josephine Joseph, who ended up assaulting Plaintiff on one occasion because she thinks Plaintiff thinks too highly of herself, when Plaintiff told her that she refused to be negative about the Americans. Plaintiff warned Joseph that if she repeated the assault incident, she would lodge a complaint with the authorities.

18. On or about September 20, 2017, Eneogwe was the hallway officer. Plaintiff actually wanted a remote control to a TV, following an incident where she caught an inmate with a contraband. The TV remote control would be in the possession of the hallway officer because it was shared by many officers, so that whoever needed it would approach the hallway officer. Plaintiff requested it from Eneogwe. Eneogwe indicated he had turned it over to another officer, namely Kuloyo, an African and a friend of Kuloyo. Kuloyo had in the past attempted to get Plaintiff to yield to Eneogwe's advances but failed. At any rate, Plaintiff and Eneogwe went to Kuloyo's unit. Though Kuloyo had been told the purpose of Plaintiff and Eneogwe's appearance at his unit, both Kuloyo and Eneogwe "teased" Plaintiff such that Kuloyo gave the TV remote control to Eneogwe instead of Plaintiff. Plaintiff indicated that Kuloyo was being unfair to her. Eneogwe then made another sexual remark after which he stated "whatever General (referring to himself) says, that is what will happen" meaning that all he had said to Plaintiff must happen. "I will keep frustrating you until you realize I want you."

19. Seeing that there is no end to Eneogwe's incessant harassment, Plaintiff then decided to submit an IOC against Eneogwe. When Plaintiff indicated she needed an IOC to lodge her complaint the supervisors claimed there was no IOC form. Plaintiff had to go to

another floor to pick one up. She then submitted an IOC on Eneogwe on September 20, 2017, complaining, inter alia, that Eneogwe had been sexually harassing her for about three years; and that she had complained to Lewis. Additionally, she outlined the incident of that day therein.

20. That same day, the supervisors "ganged up" and issued a disciplinary write-up on the Plaintiff alleging that she instigated and participated in a verbal altercation with Eneogwe. The units have video they use to monitor virtually everything going on at the premises and verify allegations. Though the Unit Video Footage in this case supports Plaintiff's side of the story on the occurrence of that day, Eneogwe, the harasser was not disciplined.

21. Rather, as a result of her sexual harassment complaint, Plaintiff was, suspended for five days without pay and received eight months of probation for her alleged actions.

22. Lt. Lee, a friend of Eneogwe who was cognizant of Plaintiff's complaint, told Eneogwe on September 20, 2017, that Plaintiff had submitted an IOC on him and advised him to go and submit an IOC on Plaintiff for the same date. Though Eneogwe could not submit an IOC until a much later date, he dated his IOC September 20, 2017.

23. Significantly, when Captain Hill, the immediate supervisor of Lt. Lewis received Plaintiff's IOC, he ordered the Plaintiff to re-write the complaint on Eneogwe and to delete the portion of the IOC which discussed the sexual harassment. He told Plaintiff that he would "frustrate" her life if she did not comply with his orders. Out of fear of retaliation, the Plaintiff re-wrote the IOC and deleted the sexual harassment part of her complaint and then resubmitted the IOC. Upon receipt, Captain Hill charged Plaintiff with lying and providing two different versions of her complaints now. In the presence of

Eneogwe and other officers, Capt. Hill repeatedly called Plaintiff a liar and bullied her. He then said "in fact, I'm changing your card right now" meaning he was changing Plaintiff's shift. Plaintiff asked why her shift was being changed. Hill threatened to discipline her for insubordination if she said any more word.

24. Capt. Hill then ordered Lt. Gentry to change Plaintiff's card. He then called Eneogwe to his office and asked for his version. Hill allowed Eneogwe to say all he had to say but precluded Plaintiff from telling her full version, continued to "bully" her and told her "I don't care." Hill worked in concert with other supervisors of Plaintiff to subject her to an intolerably hostile work environment and perpetuate the harassment that she was already subjected to, at the hands of Eneogwe. Furthermore, Plaintiff was falsely written up. This triggered several grievances that were poorly handled by the employees of TDCJ. Some of the employees were: Lt. Gentry, Lee, Sgt. Alada, Sgt. Winston, Lt. Benford. In fact, about two of them told Plaintiff that they had to comply with Hill's instruction to keep their job and that they knew Plaintiff was innocent but that they could not help Plaintiff since Hill was out to get her. Moreover, Major Bennett joined hands with Hill, her subordinate and misled Plaintiff into signing documents, one of which would preclude her from speaking at a hearing on her disciplinary action.

25. The multiple occurrences landed Plaintiff in the hands of a medical care provider and she ended up with a psychiatrist who diagnosed her with, inter alia, Adult Sexual Abuse, confirmed; Adjustment Disorder with other symptoms.

26. Plaintiff also grieved the card change order, that would change her shift and alter or interfere with her school schedule. When the video footage proved her correct, her card was restored. Even with that, she was made to remain in Eneogwe's environment.

27. The investigation on Plaintiff's claim was poorly conducted. In fact, when the TDCJ internal EEO Officer was involved and Plaintiff had to be interviewed on her claims, Hill and Lee allowed several supervisors, who had "ganged up" with Hill were to remain in the room where the interview was conducted.

28. When Plaintiff returned from her suspension/ vacation in February 2018, intending to resume her job duties, she was not allowed to resume and was fired.

29. Essentially, TDCJ informed Plaintiff that one of the allegations in Eneogwe's IOC, was that Plaintiff asked Eneogwe, if his penis was as big as the size of a water bottle; called Eneogwe, "Ashawo" meaning a prostitute and that Eneogwe claimed that Plaintiff sent her nude picture to Eneogwe on i-chat – A statement that was false. When Eneogwe was asked to produce the pictures, he claimed he deleted them. According to TDCJ, a Josephine Joseph mentioned in paragraph 17 above, indicated that she overheard Plaintiff ask Eneogwe about the size of his penis, in Igbo language though she is not Igbo or a Nigerian.

30. According to TDCJ, those all alleged acts of Plaintiff violate its policy. Thus, TDCJ informed Plaintiff that she had been recommended for discharge from employment.

31. TDCJ, Plaintiff was told to quit her job and she refused to do so, stating she did no wrong and that she was being unjustly punished for reporting a sexual harassment claim.

32. On or about February, 2018 was the last day of Plaintiff's employment with the Defendant. She was forced to sign documents which contained statements which were not true. Specifically, they made her sign 8-10 items admitting to violations of policy of a disciplinary nature which she did not commit. During this meeting, the supervisors, especially Warden Babcock became very upset that the Plaintiff had filed her sexual

9

harassment claims against the Defendant. The Warden yelled "get out of my office, these investigators are here because you filed a sexual harassment claim" at Plaintiff.

33. Plaintiff was then informed that the recommendation for discharge was approved and was fired.

34. Upon information and belief, Defendant has a history of having its employees "gang up" against and framing up Complainants of this type or similar type of claims after which Defendant would fire them.

35. As a result of the Defendant's conduct, Plaintiff suffered both economic and non-economic injuries.

36. Clearly, the Plaintiff was subjected to sexual harassment by the Defendant when the upper management has known about the sexual harassment and the various incidents out lined above and failed to remedy said harassment and ultimately terminated her employment.

37. Upon information and belief, sexual harassment is part of the norms of the Defendant and whoever speaks out pays a high price.

## VII.

## CAUSES OF ACTION

**COUNT ONE – HOSTILE WORK ENVIRONMENT
DISCRIMINATION IN EMPLOYMENT**

38. The Plaintiff re-pleads Paragraphs 9-37 and are incorporated by reference in the following claim for relief. Plaintiff would show this Court that the Defendant's conduct as alleged above constitutes discrimination based on sex discrimination in violation pursuant to the Texas Labor Code Chapter 21 (2016). Specifically, the

Defendant/employer committed an unlawful employment practice because of the sex of the Plaintiff in that Defendant:

(1) …discharged the Plaintiff, and discriminated in any other manner described in the facts stated above against the Plaintiff in connection with compensation or the terms, conditions, or privileges of employment; and/or

(2) limited, segregated, or classified the Plaintiff in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of the Plaintiff/employee.

39. The stated reasons for the Defendant's termination of the Plaintiff were not the true reasons, but instead were pretexts to hide the Defendant's discriminatory animus.

40. Plaintiff alleges that Defendant subjected her to a hostile work environment based on her sex and retaliation; that the harassment was sufficiently severe and pervasive or was such as altered the conditions of her employment. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## VIII.
## COUNT TWO -RETALIATION

41. The preceding paragraphs 9-37 are incorporated by reference in the following claim for relief.

The Plaintiff asserts that the Defendant was in violation of Chapter 21 of the Texas Labor Code in providing a hostile work environment which altered the term and conditions of employment.

In that the Defendant/employer, committed an unlawful employment practice when the Defendant/employer retaliated or discriminated against the Plaintiff who, under this chapter asserts the following:

42. Plaintiff would show this Court that the aforementioned conduct constitutes retaliation because (1) Plaintiff undertook protected activities by inter alia, filing complaints against an employee and complaining about sexual discrimination/harassment, (2) Plaintiff suffered adverse employment actions when she was inter alia, suspended without pay, placed on probation and fired, and (3) but for complaining about sexual harassment among other things, Plaintiff would not have suffered the adverse employment actions.

## IX.

### COUNT THREE-HOSTILE WORK ENVIRONMENT- TITLE VII

43. The preceding paragraphs 9-42 are incorporated by reference in the following claim for relief. Plaintiff asserts that the Defendant was in violation of Title 42 U.S.C. Section 2000 (e)(2017). The retaliation clams asserted apply to all causes of action pursuant to Title VII claims and all claims made pursuant to the Texas Labor Code.

44. Plaintiff would show this Court that the aforementioned conduct constitutes a hostile work environment because Plaintiff was forced to endure daily verbal abuse about her sex and height. When she complained, she was suspended, bullied, falsely written up, berated and ultimately terminated from employment.

45. Plaintiff alleges that Defendant subjected her to a hostile work environment based on her sex and retaliation; that the harassment was sufficiently severe and pervasive or was such as altered the conditions of her employment. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

46. The harassment was sufficiently severe and pervasive or was such as altered the conditions of her employment

## X.

## COUNT FOUR-RETALIATION

47. The preceding paragraphs 9-46 are incorporated by reference in the following claim for relief. The Plaintiff asserts that the Defendant was in violation of 42 U.S.C. 2000 (e) et. seq.:

a. In that the Defendant/employer, committed an unlawful employment practice when the Defendant/employer retaliated or discriminated against the Plaintiff who, under this chapter asserts the following:

b. Plaintiff alleges that Plaintiff's opposition to unlawful practices; participation in investigations, proceedings, was unlawful for a Defendant\employer to discriminate against any of its employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has

opposed any practice made unlawful by this section, or because the Plaintiff has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter of Title VII of the United States Code.

48. Plaintiff would show this Court that the aforementioned conduct constitutes retaliation because (1) Plaintiff undertook protected activities by inter alia, filing complaints of sexual harassment, (2) Plaintiff suffered adverse employment actions when she was inter alia, suspended without pay, harassed and fired, and (3) but for filing said complaints regarding her sexual harassment, among other things, Plaintiff would not have suffered the adverse employment actions.

## XI.

## ATTORNEYS' FEES

48. Plaintiff further pleads that due to the actions outlined above by the Defendant that the Plaintiff is entitled to reasonable and necessary attorney's fees.

## XII. JURY DEMAND

50. Plaintiff hereby demands a trial by jury.

## XIII. ADOPTION BY REFERENCE

51. Except as otherwise expressly set forth or implied by context, all statements set forth in each paragraph of this pleading are adopted by reference and incorporated into each and every other section and paragraph of this pleading to afford Plaintiff her maximum recovery for relief and for purposes of providing fair notice of Plaintiff's allegations.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited

to appear and answer herein, and that upon final trial, Plaintiff be reinstated to her position as a Correctional Officer; that Plaintiff recovers actual damages as specified above from Defendant, plus costs of Court, pre-judgment and post-judgment interest at the legal rate; Plaintiff be awarded reasonable attorney fees, compensatory damages, exemplary damages and have such other and further relief, general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and circumstances.

Respectfully Submitted,

**THE GBENJO LAW GROUP**

/s/ *Jack F. Holmes*
Jack F. Holmes
Bar Number 00784289
Fed. Id. No. 3161082
9009 Bissonnet Street
Houston Texas 77074
Phone: 713-771-4775
Fax: 713-771-4784
Email:
Yourlawgroup9@yahoo.com
Attorney for Plaintiff